Merrimack, }
Oct. 2, 1917. }

## VERA CHEMICAL COMPANY *v.* STATE.

Tank cars, owned by a foreign corporation and used by it in making shipments to its customers within this state over a railroad which charges the customary freight rate thereon and makes an allowance to the corporation for car mileage, are taxable to it under Laws 1911, *c.* 169, *s.* 11.

Property otherwise taxable is not exempt from a general state tax because employed in commerce between the states.

APPEAL, from a decision of the state tax commission refusing to abate the tax assessed for the year 1916 against the plaintiff. Facts agreed.

The plaintiff is a Wisconsin corporation, engaged in manufacturing chemicals and their products, which it sells in the usual course of commercial business. Mill owners are customers for some of its products, which it ships in hogsheads, barrels, or otherwise. One customer, the Henry Paper Company, is located at Lincoln, New Hampshire; and the plaintiff ships in its own tank cars certain of its products from its factory at Stoneham, Mass., to the Paper Company at Lincoln. The plaintiff owns and uses four of these tank cars in connection with its Stoneham business. They are marked in large letters, "Vera Chemical Company, Stoneham, Mass."

The freight rate to Lincoln, on the product so shipped, is the same as when the product is shipped in hogsheads or barrels, in cars of the railroad company. Other than an allowance of three fourths of a cent per car for each mile traveled on the Boston & Maine Railroad, the plaintiff receives no return from the railroad. The railroad charges back the cost of incidental repairs on the cars, and last year the car mileage allowance amounted to $142.09, of which less than one-third was for mileage in New Hampshire, and the payment to the railroad for repairs was $50.88.

The plaintiff is not in the business of a car-carrying company. It does not loan, lease, let, or transfer its cars to third parties other than as herein stated; carries no goods other than its own in its cars and derives its profit from the sale of its goods in the usual commercial way. It has no custodian, servant or agent to accompany the cars when they are used in transporting goods. It places its products aboard the car at Stoneham and then turns the car over to the railroad, which issues its bill of lading for the contents and there-

after takes entire charge of the car and goods at the plaintiff's siding at Stoneham, maintaining charge and dominion over the same until the car arrives at its destination and is returned to Stoneham.

It does not use any one car exclusively in its New Hampshire business and has no regular route of travel in New Hampshire. It uses the cars to send its products to customers wherever it may have occasion to deliver the same. It has no other property within the state of New Hampshire.

The state tax commission taxed the plaintiff for the year 1916 on its tank cars used in New Hampshire. On motion for rehearing, the tax commission refused to abate the tax, or to declare it illegal and void. The plaintiff seasonably filed its petition in the superior court under Laws 1911, c. 169, asking that the tax be abated and declared illegal and void. Transferred without ruling from the October term, 1916, of the superior court by *Sawyer*, J.

*Leo S. Hamburger* (of Massachusetts) and *William W. Thayer* (*Mr. Hamburger* orally), for the plaintiff.

I. The kind of companies meant to be taxed under this and analogous acts are those in the business of public service, common carriers, such as the Pullman car company, as is shown in the following decisions of the United States supreme court: *Pullman's Palace Car Co.* v. *Pennsylvania*, 141 U. S. 18; *Cleveland &c. R. R. Co.* v. *Pennsylvania*, 15 Wall. 300; *State R. R. Tax Cases*, 92 U. S. 575; *Delaware R. R. Tax*, 18 Wall. 206; *Western Union Tel. Co.* v. *Texas*, 105 U. S. 460; *Gloucester Ferry Co.* v. *Pennsylvania*, 114 U. S. 196; *Western Union Tel. Co.* v. *Massachusetts*, 125 U. S. 530; *Marye* v. *B. & O. R. R.*, 127 U. S. 117, 124. See also *Comstock* v. *Grand Rapids*, 54 Mich. 641.

II. Aside from the question of the kind of a company taxable under the act, the plaintiff is not so taxable because, first, it has no property permanently within the state; second, it is not doing business within the state so as to give its property temporarily there a *situs* for the purposes of taxation: *Pullman's Car Co.* v. *Pennsylvania, supra; Delaware R. R. Tax, supra; Western Union Tel. Co.* v. *Massachusetts, supra; Leloup* v. *Mobile*, 127 U. S. 640, 649; *Lane County* v. *Oregon*, 7 Wall. 71, 77; *Union Pacific R. R. Co.* v. *Peniston*, 18 Wall. 5, 29; *State R. R. Tax Cases, supra; Brown* v. *Houston*, 114 U. S. 622; *Coe* v. *Errol*, 116 U. S. 517, 524; *S. C.* 62 N. H. 303; *Gloucester Ferry Co.* v. *Pennsylvania, supra; Marye* v. *B. & O. R. R.*,

*supra; Connecticut River Lumber Co.* v. *Columbia,* 62 N. H. 286, 288; *Cooper Mfg. Co.* v. *Ferguson,* 113 U. S. 727; *People* v. *Roberts,* 27 N. Y. App. Div. 455; *Wheeling &c. Trans. Co.* v. *Wheeling,* 99 U. S. 273; *Robbins* v. *Shelby County Taxing District,* 120 U. S. 489; *Hays* v. *Pacific Mail S. S. Co.,* 17 How. 596; *Wiggins Ferry Co.* v. *East St. Louis,* 107 U. S. 365; *Morgan* v. *Parham,* 16 Wall. 471; *Gloucester Ferry Co.* v. *Pennsylvania, supra.*

III. States cannot regulate interstate commerce; the power to do that has been expressly and exclusively vested in congress by the federal constitution: *Corson* v. *Maryland,* 120 U. S. 502; *Brown* v. *Maryland,* 12 Wheat. 419; *American Fertilizer Co.* v. *Board &c. of North Carolina,* 43 Fed. Rep. 609; *American Sugar Refining Co.* v. *Louisiana,* 179 U. S. 89; *Adams Express Co.* v. *Ohio State Auditor,* 165 U. S. 194; *Brown* v. *Maryland, supra; Wiggins Ferry Co.* v. *East St. Louis, supra; Connecticut River Lumber Co.* v. *Columbia, · supra; Gloucester Ferry Co.* v. *Pennsylvania, supra.*

*James P. Tuttle,* attorney-general, *Joseph S. Matthews,* assistant attorney-general, and *James A. Moynihan,* (the attorney-general orally), for the state.

PEASLEE, J. "Every . . . other corporation or company not a railroad company owning any cars operated for profit on any railroad in this state, shall pay to the state an annual tax . . ." Laws 1911, *c.* 169, *s.* 11. It was the evident purpose of this enactment to cause to be taxed all cars operated for profit on New Hampshire railroads. The plaintiff contends, however, that it is not within the terms of the statute, and that therefore its cars were illegally taxed.

Its first claim is that because the title of the act is "to create a permanent tax commission and to provide for the taxation of certain public service corporations and companies," therefore there was no intent to include the plaintiff's property, since the plaintiff is not a public utility. The argument gives undue weight to the title as compared with the body of the statute. "If we find within the body of the act an express and unequivocal grant of powers and rights not mentioned in the title or preamble, we cannot restrict the grant of those rights merely because the terms of such grant are more extensive than the terms of the title and preamble." *Piscataqua Bridge* v. *Bridge,* 7 N. H. 35, 57; *Boston & Maine Railroad* v. *Portsmouth,* 71 N. H. 21, 25.

It is said that the plaintiff's cars are not "operated for profit,"

because the sum paid to the plaintiff by the railroad does not, taken by itself, show a use profitable to the plaintiff. If it were assumed that this sum represented the whole "profit" of the enterprise to the plaintiff, the question would arise whether the fact that the result of a business venture showed a loss would render the property embarked therein exempt from taxation to which it would be subject if the venture were profitable. It is highly improbable that the legislature attempted to so classify property for taxation. But it appears here that there is much more involved by way of profit to the plaintiff. By this means it saves the expense it must otherwise incur for containers for its wares; and, as stated in argument, it gains trade by delivering them in a way which is convenient for the purchaser. There can be no doubt that the cars are operated for profit within the meaning of the act.

The suggestion of a distinction because the cars are operated by the railroad and not by the plaintiff is not well taken. The requirement of the act is merely that the cars be operated upon some railroad within the state. It is immaterial who operates them.

It is further argued that if the plaintiff is within the meaning of the act its property is not taxable because it had no *situs* in the state. The same question has arisen as to the taxation of cars owned by car loaning companies. In *American Refrigerator Transit Company* v. *Hall*, 174 U. S. 70, the facts as to *situs* were in every way comparable with those here. The company furnished such cars as were called for either by the railroads or shippers. It was paid by the railroad three fourths of a cent for each mile traveled by a car. The cars did not run over any scheduled route, there was no contract to furnish any certain number of cars, and their routing and operation were wholly in the discretion of the railroad. The company had no place of business in the state. Forty-two of its cars were found in the state, being used as above described, on the taxing date, and were taxed to the plaintiff. Subsequently it appeared that this was about the average number of its cars in the state at any given time. In upholding the jurisdiction of the state to levy the tax the court said: "Where a corporation of one State brings into another, to use and employ, a portion of its movable personal property, it is legitimate for the latter to impose upon such property, thus used and employed, its fair share of the burdens of taxation imposed upon similar property used in like way by its own citizens, . . . . such a tax may be properly assessed and collected, in cases like the present, when the specific and individual items of

property so used and employed were not continuously the same, but were constantly changing, according to the exigencies of the business, and that the tax may be fixed by an appraisement and valuation of the average amount of the property thus habitually used and employed.  Nor would the fact that such cars were employed as vehicles of transportation in the interchange of interstate commerce render their taxation [in*]valid."  *p.* 82.

In a later case the element of justice and equality in the tax levy was not shown.  "The complaint in this case contained no averment as to the average number of cars of plaintiff in error used in the State of Utah, but it did show that the company was doing business in Utah in the year for which the tax in question was levied, and that it was running its cars into and through the State, using, employing and caring for them there for profit, in the same manner as the cars in that case [*American Refrigerator Transit Company* v. *Hall, supra*], and it was not alleged that the assessment by the state board of equalization was unreasonable, or unjust, or in excess of the valuation of other like property for taxation, or that the method of apportionment was erroneous.  The presumption is that the action of the taxing officers was correct and regular, and that the number of cars assessed by the state board of equalization was the average number used and employed by plaintiff in error in the State of Utah during 1897.  The objection is not that too many cars were assessed, or that they were assessed too much, or in an improper manner, even if we could consider such questions, but simply that they could not be taxed at all.  And this objection was considered and overruled in the case to which we have referred."  *Union Refrigerator Transit Company* v. *Lynch,* 177 U. S. 149, 154.  These authorities show that it was not beyond the power of the state to levy the present tax.

The tax is not one laid upon interstate commerce.  It is true the property here taxed was so employed, but that fact did not exempt it from local taxation.  While states cannot lay a tax upon interstate commerce, either directly or indirectly, they can tax all property of individuals or corporations found in the state, upon any reasonable basis of classification.  If property falls within the class it is taxed.  It is not exempt from a general tax because employed in commerce between the states.  The interstate character of the plaintiff's use of its cars was not a factor in determining their taxability.  If their run had been from Nashua, N. H., instead of Stoneham, Mass., the liability would have been the same.  There

* See Vol. 43 Law. Coöp. Ed. 904.

is nothing in the method here used which either immediately or remotely burdens or interferes with interstate commerce. The plaintiff is merely called upon to bear its fair share of the burden falling upon property in general. There was no error in assessing the tax or in refusing to abate it.

*Appeal dismissed.*

All concurred.