375 So.2d 1146 (1979)
INTEGRATED CONTAINER SERVICES, INC., Appellant,
v.
R.K. OVERSTREET, etc., et al., Appellees.
No. 79-292.
District Court of Appeal of Florida, Third District.
October 16, 1979.
Richard L. Lapidus and Michael A. Bienstock, Miami, for appellant.
Stuart L. Simon, County Atty. and Robert L. Krawcheck, Asst. County Atty., for appellees.
Malcolm A. Hoffmann and Edward A. Woolley, New York City, for Institute of International Container Lessors, Ltd., as amicus curiae.
Before PEARSON, KEHOE and NESBITT, JJ.
*1147 KEHOE, Judge.
After carefully considering the briefs and record on appeal, we hereby adopt the final judgment entered by the trial court as the judgment of this court except for that portion of the final judgment determining that there was no evidence to support a federal constitutional issue involving a violation to the Interstate Commerce Clause. We decline to pass upon this issue since it was not raised by the pleadings in the court below. See Sanford v. Rubin, 237 So.2d 134 (Fla. 1970); State v. Turner, 224 So.2d 291 (Fla. 1969); and Henderson v. Antonacci, 62 So.2d 5 (Fla. 1952).
"THIS CAUSE came on before the Court for non-jury trial upon the Plaintiff's amended complaint which challenges as void the tax assessments for 1975, 1976 and 1977 upon the Plaintiff's marine freight shipping containers present in Dade County. The amended complaint questions only the County's right to tax containers under Florida statutes and does not raise any issues of constitutionality, valuation, or number of containers taxed.
"The Plaintiff maintains in Dade County its Carribbean Regional Office through which it conducts business in the area from Charleston, South Carolina throughout the Carribbean and as far south as Colombia and Venezuela. The Plaintiff utilizes Dade County as a major base for the storage, leasing, and repair of marine freight shipping containers and maintains in the county a full time office and staff of employees. Additionally, the Plaintiff provides a local container depot. Daily there are present in Dade County hundreds of Plaintiff's containers which are either `on-lease' in the possession of lessees or `off-lease' in the possession of Plaintiff. Many containers remain in Dade County weeks, months, and, in some cases, even years.
"The evidence presented by the Plaintiff pertains only to `off-lease' containers and does not reflect the admitted presence of the Plaintiff's `on-lease' containers in Dade County. The property appraiser observed the following numbers of containers present on or about the taxing dates in question: 1975-369; 1976-479; 1977-859. Because the 1975 assessment was carried forward to 1976 and 1977 the assessment in the two latter years was based upon 369 containers, a smaller number than that actually present in Dade County.
"The amended complaint asserts that the assessments in question are void because Section 192.032, Florida Statutes, [1977] requires personal property to be permanently located in Dade County in order to be assessed.
"In arguing the construction of F.S. 192.032, the Plaintiff relies only upon the first sentence thereof, which refers to permanency. The Defendants, on the other hand, point out that the statute is entitled a "situs" provision and contend that when read in its entirety the provision is not a condition upon the right to tax but a means of settling disputes between counties.
"Clearly, the statute in question recognizes the taxability of property which comes into and leaves the state, in the same year, consequently the provision does not appear to condition the right to tax upon permanency of location. Moreover, if, as the Plaintiff contends, the statute was enacted as a direct result of the Supreme Court's holding in Caruthers v. Curcie Brothers, Inc., (Fla. 1967), 195 So.2d 545, the legislative intent was to settle disputes between counties since that was the problem in Caruthers. The Court holds that F.S. 192.032 is a situs provision and that the right to tax is established by the following statutory mandate:
`196.001. Property subject to taxation.  Unless expressly exempted from taxation, the following property shall be subject to taxation in the manner provided by law:
(1) All real and personal property in this state...' (emphasis supplied)
"See Williams v. Jones (Fla. 1975) 326 So.2d 425, 435 [appeal dismissed, 429 U.S. 803, 97 S.Ct. 34, 50 L.Ed.2d 63 (1976)].
"Whether or not F.S. 192.032 is construed to require `permanency', the Plaintiff has failed to prove that the assessments are *1148 void. The presumptions and burden of proof applicable in challenges to tax assessments have been defined as follows:
`As constitutional officers, the actions of the tax assessors are clothed with a presumption of correctness ... which ... must be affirmatively overcome by appropriate and sufficient allegations and proof excluding every reasonable hypothesis of a legal assessment.' District School Board of Lee County v. Askew (Fla. 1973) 278 So.2d 272, 275 [quoting from Powell v. Kelly, 223 So.2d 305 (Fla. 1969)]. See also Aeronautical Communications Equipment, Inc. v. Metropolitan Dade County (3d DCA 1969) 219 So.2d 101 [cert. denied, 225 So.2d 911 (Fla. 1969)].
`[A]n assessor may reach a correct result for the wrong reason.' City National Bank of Miami v. Blake, (3rd DCA 1972) 257 So.2d 264, 266.
"The Plaintiff presented no evidence of the total number of containers present in Dade County at any time during the period in question. The Plaintiff's only evidence pertained to those containers which were `off lease'. The evidence of record, on the other hand, sustains the validity of the assessments for the three years in question both on an `actual presence' basis and on an `average presence' basis.

"Actual Presence.

"The `off lease' containers actually present on January 1, 1975 were present for an average of 10.3 months and the `off lease' containers actually present on January 1, 1976 were present for an average of 5.7 months. While the Plaintiff made no computation of average stay of containers present in Dade County on January 1, 1977, lengthy stays were prevalent. Some containers present on each taxing date were present in Dade County for more than two years.
"Of the 269 `off lease' containers present January 1, 1975, 196 containers were present for six months or more. Of the 474 containers present on January 1, 1976, some 350 were present for three months or more and some 176 were present for six months or more. Even if `permanency' were required as a condition for taxation, the long continuing presence in Dade County would establish permanency:
In tax cases the requirement of permanency has been found satisfied where presence is consistent with continuity and not sporadically or temporarily present.
"Overstreet v. Sea Containers, Inc. (3d DCA 1977) 348 So.2d 628, 630 [cert. denied 359 So.2d 1219 (Fla. 1978),] citing City of Lakeland v. Lawson Music Co., Inc., (Fla. 2d DCA 1974) 301 So.2d 506.

"Average Presence.

"Evidence presented by the Plaintiff establishes that during the years in question `off-lease' containers alone were present on the following average basis: For 1975, 467 containers; for 1976, 662 containers; for 1977, 246 containers. The Plaintiff's chief witness testified that, as related to the average presence of `off-lease' containers, the assessment for 1975 was `low', the assessment for 1976 was `right' and that the assessment for 1977 was `a little high'. Consequently, the assessments in question bear a close relationship to the continuous average presence of `off-lease' containers in Dade County. If `on-lease' containers were accounted for, the average presence would necessarily be even higher.

CONSTITUTIONAL QUESTIONS
"The Plaintiff neither presented any constitutional questions in its Amended Complaint nor did it prove any facts which would have raised such an issue under the Commerce Clause.
"The only evidence presented by the Plaintiff pertained to `off-lease' containers and the Plaintiff acknowledged that the assessments closely relate to the average presence of such containers. Additionally, the Plaintiff stated in answer to interrogatories in evidence:
While in Dade County the containers were put to no use.
"By admission the `off-lease' containers were not being used in interstate or foreign *1149 commerce while in Dade County but were out of use and, in most cases, under repair. Consequently there is no evidence to support a commerce clause issue even had one been raised.[1]

EXHAUSTION OF ADMINISTRATIVE REMEDIES AND FAILURE TO FILE WITHIN NON-CLAIM PERIOD
"The Plaintiff did not exhaust administrative remedies nor did it bring this action within the applicable non-claim period for any of the assessments in question. Because the Plaintiff has not established that the subject assessments are void, it is barred from maintaining this suit because it failed to exhaust administrative remedies, Blake v. R.M.S. Holding Corp. (3d DCA 1977) 341 So.2d 795, 800; Monroe County v. Gustinger (3rd DCA 1973) 285 So.2d 431, and because it did not bring this suit within the applicable non-claim period. F.S. 194.171(2).

FAILURE TO OBTAIN AUTHORIZATION TO DO BUSINESS IN FLORIDA
"The Plaintiff has not sought or obtained authority to transact business in this State. Section 607.354, Florida Statutes, provides as follows:
No foreign corporation transacting business in this state without authority to do so shall be permitted to maintain any action, suit, or proceeding in any court of this state until such corporation shall have obtained authority to transact business in this state. (emphasis supplied)
"The Plaintiff asserts that said statutes cannot prohibit the subject lawsuit, citing Allenberg Cotton Company v. Pittman, 419 U.S. 20, 95 S.Ct. 260, 42 L.Ed.2d 195 [(1974)]. In Allenberg the Plaintiff raised a federal question concerning the validity of a state statute under the Commerce Clause of the Federal Constitution [419 U.S. at 23, 95 S.Ct. at 262,] 42 L.Ed.2d at 200. Because the Plaintiff at bar has not raised an issue under the United States Constitution, Allenberg is inapposite.
"The Plaintiff's actions in Dade County go beyond procuring orders for out of state acceptance or merely transacting business in interstate or foreign commerce. Plaintiff's activities include the servicing, handling, storage, repair, and maintenance, of freight shipping containers. An average of 246 to 467 `off-lease' containers were *1150 present daily during the period in question. While these containers were in Dade County they were not in interstate or foreign commerce but were `put to no use'.
"In 1975 thirty one percent (31%) of the containers coming `off-lease' in Dade County were damaged and required repair. This means that of the 467 containers present in Dade County on an average daily basis in 1975, some 145 containers required repair in Dade County. The damage rate in 1976 was fifty six percent (56%), therefore, of the 662 containers present on an average daily basis in 1976, some 370 required repair in Dade County.
"The court finds that the Plaintiff was doing business in Dade County. Having failed to seek and obtain authority to transact business in the State, the Plaintiff is barred from maintaining this action. It is therefore
"ORDERED AND ADJUDGED that final judgment is hereby entered against the Plaintiff and in favor of the Defendant, costs to be assessed against Plaintiff."
Affirmed.
NOTES
[1] Even if the Plaintiff had pled a constitutional issue, contending that the subject tax was required to be apportioned the evidence and the law would sustain the subject assessments as properly apportioned. The number of containers assessed closely relates to the average presence of `off-lease' containers alone. Moreover, an undetermined number of `on-lease' containers was also present in Dade County so that the average number of containers present exceeded the average number admitted by the Plaintiff.

The Supreme Court of California has carefully analyzed and affirmed the constitutionality of assessing freight shipping containers on an `average presence' basis:
The principle of Pullman, in which the rolling stock followed prescribed routes and schedules, was extended in American Refrigerator Transit Co. v. Hall (1899) supra, 174 U.S. 70, 19 S.Ct. 599, 43 L.Ed. 899. In Hall the Supreme Court sustained the constitutionality of a Colorado property tax on a stipulated average number of railroad cars which had been located within the territorial limits of the state during the taxing year, although it was agreed by the parties that the cars `never were run in said state in fixed numbers, nor at regular times, nor as a regular part of particular trains ...' (Id. at p. 72, 19 S.Ct. at 600.) The court nonetheless held that the habitual employment of a substantial number of cars within the state, albeit on irregular routes, was sufficient to establish a tax situs permitting taxation of the average number of cars so engaged. The Court stated that a tax on an `average presence' basis was proper although `the specific and individual items of property so used and employed were not continuously the same, but were constantly changing, according to the exigencies of the business ...' (Id. at p. 82, 19 S.Ct. at p. 604.) (See also Union Refrigerator Transit Co. v. Lynch (1900) supra, 177 U.S. 149, 20 S.Ct. 631, 44 L.Ed. 708; Johnson Oil Co. v. Oklahoma (1933) supra, 290 U.S. 158, 162, 54 S.Ct. 152, 78 L.Ed. 238; Central R. Co. v. Pennsylvania (1962) 370 U.S. 607, 615, 82 S.Ct. 1297, 8 L.Ed.2d 720) (emphasis supplied).
Sea-Land Service, Inc. v. County of Alameda (1974) [36 Cal. App.3d 825, 112 Cal. Rptr. 106] 528 P.2d 56, 63.